IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

STEPHANIE HUNTER     &ast;
2276 Courtland Avenue    &ast;
Oakland, California 94601   &ast;
          &ast;
     Plaintiff,  &ast;
          &ast; Civil Action No.: _____
  vs.       &ast;
          &ast;
EMANUEL PAYTON    &ast;
1438 Jonquil Street, N.W.   &ast;
Washington, D.C. 20012   &ast;
          &ast;
     Defendant. &ast;

## COMPLAINT

   COMES NOW Plaintiff, Stephanie Hunter, by and through counsel undersigned who

brings the within action against Defendant, Emanuel Payton and in support thereof, states the

following:

### JURISDICTION & VENUE

   1.  This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332 in

that the amount in controversy, exclusive of interests and costs, exceeds $75,000.00, and the

parties are citizens of different States.  The Defendant is a resident of the District of Columbia

and is believed to have conducted business related to the Plaintiff in the same jurisdiction.

   2.  Venue is proper pursuant to 28 U.S.C. § 1391, as the Defendant resides in this

judicial district and/or acts or omissions giving rise to the claims alleged herein occurred

within this judicial district, and the Defendant is subject to the personal jurisdiction in this

district.

**PARTIES**

3.     The Plaintiff is a resident of the State of California, residing at 2276 Courtland Avenue, Oakland, California 94601.

4.     The Defendant is a District of Columbia resident residing at 1438 Jonquil Street, N.W., Washington, D.C. 20012.

## COUNT 1
(Failure to Pay Monies Owed)

5.     That Paragraphs 1 through 4 are incorporated herein as if fully restated.

6.     That on or about June 20, 2005, the Plaintiff loaned money to the Defendant as is evidenced by the document entitled "Mortgage" (hereinafter, the "Agreement") attached hereto and marked as *Exhibit "A"*.

7.     That pursuant to the terms of the Agreement, Defendant was to pay to Plaintiff the sum of $72,500 plus interest at the rate of fifteen percent (15%) per annum to the Plaintiff, that the indebtedness was all due and payable on September 20, 2005.

8.     That the loan was a commercial indebtedness arising out of business enterprises conducted by the Defendant in the District of Columbia.

9.     That the last payments made by Defendant were for the months of April and May 2006 received by Plaintiff on June 13, 2006.

10.     That as of May 20, 2007, there is due upon this indebtedness the principle sum of $72,500.00, accruing interest at the rate of 15% annually ($906.25 per month and $30.21 per diem) plus accrued late charges in the amount of $12,658.44 and plus any future late charges for a total amount due to Plaintiff as of May 20, 2007, of $85,158.44, plus accrued attorney's fees as set forth on *Exhibit "B"*, attached.

11.    That despite demand therefore, Defendant has failed to pay all sums due and owing to Plaintiff upon the indebtedness.

WHEREFORE, Plaintiff demands judgment against Defendant in the amount of $85,158.44, plus accruing late charges together with per diem interest of $30.21, plus the costs and expenses of litigation and attorney's fees for the prosecution of these causes.

Respectfully submitted,

LAW OFFICES OF JEFFREY W. HARAB, P.C.

By: _____

Jeffrey W. Harab                          #07656
4600 North Park Avenue, Suite 101
Chevy Chase, Maryland 20815
(301) 656-1100
Attorney for Plaintiff

G:\Pleadings\HUNTERvPAYTON.Complaint.VER052507.wpd

mortgage deed of trust document emanuel
mortgage deed of trust document between Emanuel Payton and Stephanie Hunter


After Recording Return To: Ms.Stephanie Hunter, 2000 Ft Davis Street S.E.
#101, Washington, DC 20020
DEED OF TRUST

DEFINITIONS

Words used in multiple sections of this document are defined below and other
words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding
the usage of words used in this document are also provided in Section 16.

"Security Instrument" means this document, which is dated June 20,2005
, together with all Riders to this document.
"Borrower" is Emanuel Payton. Borrower's
address is 1438 Jonquil Street, NW, Washington DC 20012. Borrower is the trustor
under this
Security Instrument.
"Lender" is Stephanie Hunter. Lender is a sole person
organized and existing under the laws of DC. Lender's address is 2000 Fort Davis
Street, SE #101
. Lender is the beneficiary under this Security Instrument.
(I)) "Trustee" is Cedric Alexander. Trustee's
address is 1 Captain Drive, D155, Emeryville, Ca 94608.
"Note" means the promissory note signed by Borrower and dated June 20, 2005
. The Note states that Borrower owes Lender $72,500.00 at 15% (proceeds
to borrower $68,875 (price reflects 5 points origination fees)
Dollars (U.S. 68,875) plus interest. Borrower has promised to pay this debt in
regular Periodic Payments (30 days interest only payments of $906.25) and to pay the
debt in full
not later than 90 days from June 20, 2005.
If paid prior to 90 days there is no prepayment penalty.
"Property" means the property that is described below under the heading
"Transfer of Rights in the Property."
"Loan" means the debt evidenced by the Note, plus interest, any prepayment
charges and late charges due under the Note, and all sums due under this
Security Instrument, plus interest. DISTRICT OF COLUMBIA--Single Family--Fannie
Mae/Freddie Mac UNIFORM INSTRUMENT Form 3009 1/01 (rev. 5/02)    (page 1 of 16
pages)


(H) "Riders" means all Riders to this Security Instrument that are executed by
Borrower. The following Riders are to be executed by Borrower [check box as
applicable]:
    Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
    Balloon Rider ☐ Planned Unit Development Rider ☐ Other(s) [specify]
    1-4 Family Rider ☐ Biweekly Payment Rider

    "Applicable Law" means all controlling applicable federal, state and local
statutes, regulations, ordinances and administrative rules and orders (that
have the effect of law) as well as all applicable final, non-appealable
judicial opinions.
"Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by
a condominium association, homeowners association or similar organization.


EXHIBIT

A

mortgage deed of trust document emanuel
"Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

"Escrow Items" means those items that are described in Section 3.
"Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
"Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
"RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
"Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably DISTRICT OF COLUMBIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3009 1/01 (rev. 5/02) (page 2 of 16 pages)

grants and conveys to Trustee, in trust, with power of sale, the following described property located in the state of Maryland, Columbia, MD which currently has the address of 3238 Weatherworn Way, Columbia, Md. 221046

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a

mortgage deed of trust document emanuel
uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late
Charges. Borrower shall pay when due the principal of, and interest on, the debt
evidenced by the Note and any prepayment charges and late charges due under the
Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3.
Payments due under the Note and this Security Instrument shall be made in U.S.
currency. However, if any check or other instrument received by Lender as
payment under the Note or this Security Instrument is returned to Lender unpaid,
Lender may require that any or all subsequent payments due under the Note and
this Security Instrument be made in one or more of the following forms, as
selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,
treasurer's check or cashier's check, provided any such check is DISTRICT OF
COLUMBIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3009
1/01 (rev. 5/02)    (page 3 of 16 pages)

drawn upon an institution whose deposits are insured by a federal agency,
instrumentality, or entity; or (d) Electronic Funds Transfer.
Payments are deemed received by Lender when received at the location designated
in the Note or at such other location as may be designated by Lender in
accordance with the notice provisions in Section 15. Lender may return any
payment or partial payment if the payment or partial payments are insufficient
to bring the Loan current. Lender may accept any payment or partial payment
insufficient to bring the Loan current, without waiver of any rights hereunder
or prejudice to its rights to refuse such payment or partial payments in the
future, but Lender is not obligated to apply such payments at the time such
payments are accepted. If each Periodic Payment is applied as of its scheduled
due date, then Lender need not pay interest on unapplied funds. Lender may hold
such unapplied funds until Borrower makes payment to bring the Loan current. If
Borrower does not do so within a reasonable period of time, Lender shall either
apply such funds or return them to Borrower. If not applied earlier, such funds
will be applied to the outstanding principal balance under the Note immediately
prior to foreclosure. No offset or claim which Borrower might have now or in the
future against Lender shall relieve Borrower from making payments due under the
Note and this Security Instrument or performing the covenants and agreements
secured by this Security Instrument.
   Application of Payments or Proceeds. Except as otherwise described in this
Section 2, all payments accepted and applied by Lender shall be applied in the
following order of priority: (a) interest due under the Note; (b) principal
due under the Note; (c) amounts due under Section 3. Such payments shall be
applied to each Periodic Payment in the order in which it became due. Any
remaining amounts shall be applied first to late charges, second to any other
amounts due under this Security Instrument, and then to reduce the principal
balance of the Note.
If Lender receives a payment from Borrower for a delinquent Periodic Payment
which includes a sufficient amount to pay any late charge due, the payment may
be applied to the delinquent payment and the late charge. If more than one
Periodic Payment is outstanding, Lender may apply any payment received from
Borrower to the repayment of the Periodic Payments if, and to the extent that,
each payment can be paid in full. To the extent that any excess exists after the
payment is applied to the full payment of one or more Periodic Payments, such
excess may be applied to any late charges due. Voluntary prepayments shall be
applied first to any prepayment charges and then as described in the Note.
Any application of payments, insurance proceeds, or Miscellaneous Proceeds to
principal due under the Note shall not extend or postpone the due date, or
change the amount, of the Periodic Payments.
   Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic
Payments are due under the Note, until the Note is paid in full, a sum (the

mortgage deed of trust document emanuel
"Funds") to provide for payment of amounts due for: (a) taxes and assessments
and other items which can attain priority over this Security Instrument as a
lien or encumbrance on the Property; (b) leasehold payments or ground rents on
the Property, if any; (c) premiums for any and all insurance required by
Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any
sums payable by Borrower to Lender in lieu of the payment of Mortgage
Insurance premiums in accordance with the provisions of Section 10. These
items are called "Escrow Items." At origination or at any time during the term
of the Loan, Lender may require that Community Association Dues, Fees, and
Assessments, if any, be escrowed by Borrower, and such dues, fees and
assessments shall be an Escrow Item. Borrower DISTRICT OF COLUMBIA--Single
Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3009 1/01 (rev. 5/02)
(page 4 of 16 pages)

shall promptly furnish to Lender all notices of amounts to be paid under this
Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender
waives Borrower's obligation to pay the Funds for any or all Escrow Items.
Lender may waive Borrower's obligation to pay to Lender Funds for any or all
Escrow Items at any time. Any such waiver may only be in writing. In the event
of such waiver, Borrower shall pay directly, when and where payable, the amounts
due for any Escrow Items for which payment of Funds has been waived by Lender
and, if Lender requires, shall furnish to Lender receipts evidencing such
payment within such time period as Lender may require. Borrower's obligation to
make such payments and to provide receipts shall for all purposes be deemed to
be a covenant and agreement contained in this Security Instrument, as the phrase
"covenant and agreement" is used in Section 9. If Borrower is obligated to pay
Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the
amount due for an Escrow Item, Lender may exercise its rights under Section 9
and pay such amount and Borrower shall then be obligated under Section 9 to
repay to Lender any such amount. Lender may revoke the waiver as to any or all
Escrow Items at any time by a notice given in accordance with Section 15 and,
upon such revocation, Borrower shall pay to Lender all Funds, and in such
amounts, that are then required under this Section 3.
Lender may, at any time, collect and hold Funds in an amount (a) sufficient to
permit Lender to apply the Funds at the time specified under RESPA, and (b) not
to exceed the maximum amount a lender can require under RESPA. Lender shall
estimate the amount of Funds due on the basis of current data and reasonable
estimates of expenditures of future Escrow Items or otherwise in accordance with
Applicable Law.
The Funds shall be held in an institution whose deposits are insured by a
federal agency, instrumentality, or entity (including Lender, if Lender is an
institution whose deposits are so insured) or in any Federal Home Loan Bank.
Lender shall apply the Funds to pay the Escrow Items no later than the time
specified under RESPA. Lender shall not charge Borrower for holding and applying
the Funds, annually analyzing the escrow account, or verifying the Escrow Items,
unless Lender pays Borrower interest on the Funds and Applicable Law permits
Lender to make such a charge. Unless an agreement is made in writing or
Applicable Law requires interest to be paid on the Funds, Lender shall not be
required to pay Borrower any interest or earnings on the Funds. Borrower and
Lender can agree in writing, however, that interest shall be paid on the Funds.
Lender shall give to Borrower, without charge, an annual accounting of the Funds
as required by RESPA.
If there is a surplus of Funds held in escrow, as defined under RESPA, Lender
shall account to Borrower for the excess funds in accordance with RESPA. If
there is a shortage of Funds held in escrow, as defined under RESPA, Lender
shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the
amount necessary to make up the shortage in accordance with RESPA, but in no
more than 12 monthly payments. If there is a deficiency of Funds held in escrow,
as defined under RESPA, Lender shall notify Borrower as required by RESPA, and

mortgage deed of trust document emanuel
Borrower shall pay to Lender the amount necessary to make up the deficiency in
accordance with RESPA, but in no more than 12 monthly payments.
Upon payment in full of all sums secured by this Security Instrument, Lender
shall promptly refund to Borrower any Funds held by Lender.
4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines,
and impositions attributable to the Property which can attain priority over this
Security Instrument, leasehold payments or ground rents on the Property, if any,
and Community Association Dues, Fees, DISTRICT OF COLUMBIA--Single
Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3009 1/01 (rev. 5/02)
(page 5 of 16 pages)

and Assessments, if any. To the extent that these items are Escrow Items,
Borrower shall pay them in the manner provided in Section 3.
Borrower shall promptly discharge any lien which has priority over this Security
Instrument unless Borrower: (a) agrees in writing to the payment of the
obligation secured by the lien in a manner acceptable to Lender, but only so
long as Borrower is performing such agreement; (b) contests the lien in good
faith by, or defends against enforcement of the lien in, legal proceedings which
in Lender's opinion operate to prevent the enforcement of the lien while those
proceedings are pending, but only until such proceedings are concluded; or (c)
secures from the holder of the lien an agreement satisfactory to Lender
subordinating the lien to this Security Instrument. If Lender determines that
any part of the Property is subject to a lien which can attain priority over
this Security Instrument, Lender may give Borrower a notice identifying the
lien. Within 10 days of the date on which that notice is given, Borrower shall
satisfy the lien or take one or more of the actions set forth above in this
Section 4.
Lender may require Borrower to pay a one-time charge for a real estate tax
verification and/or reporting service used by Lender in connection with this
Loan.
5. Property Insurance. Borrower shall keep the improvements now existing or
hereafter erected on the Property insured against loss by fire, hazards included
within the term "extended coverage," and any other hazards including, but not
limited to, earthquakes and floods, for which Lender requires insurance. This
insurance shall be maintained in the amounts (including deductible levels) and
for the periods that Lender requires. What Lender requires pursuant to the
preceding sentences can change during the term of the Loan. The insurance
carrier providing the insurance shall be chosen by Borrower subject to Lender's
right to disapprove Borrower's choice, which right shall not be exercised
unreasonably. Lender may require Borrower to pay, in connection with this Loan,
either: (a) a one-time charge for flood zone determination, certification and
tracking services; or (b) a one-time charge for flood zone determination and
certification services and subsequent charges each time remappings or similar
changes occur which reasonably might affect such determination or certification.
Borrower shall also be responsible for the payment of any fees imposed by the
Federal Emergency Management Agency in connection with the review of any flood
zone determination resulting from an objection by Borrower.
If Borrower fails to maintain any of the coverages described above, Lender may
obtain insurance coverage, at Lender's option and Borrower's expense. Lender is
under no obligation to purchase any particular type or amount of coverage.
Therefore, such coverage shall cover Lender, but might or might not protect
Borrower, Borrower's equity in the Property, or the contents of the Property,
against any risk, hazard or liability and might provide greater or lesser
coverage than was previously in effect. Borrower acknowledges that the cost of
the insurance coverage so obtained might significantly exceed the cost of
insurance that Borrower could have obtained. Any amounts disbursed by Lender
under this Section 5 shall become additional debt of Borrower secured by this
Security Instrument. These amounts shall bear interest at the Note rate from the
date of disbursement and shall be payable, with such interest, upon notice from

mortgage deed of trust document emanuel

Lender to Borrower requesting payment.
All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all

DISTRICT OF COLUMBIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3009 1/01 (rev. 5/02)    (page 6 of 16 pages)

receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.
If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.
  Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.
  Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to

mortgage deed of trust document emanuel
prevent the Property from deteriorating or decreasing in value due to its
condition. Unless it is determined pursuant to Section 5 that repair or
restoration is not economically feasible, Borrower shall promptly repair the
Property if damaged to avoid further deterioration or damage. If insurance or
condemnation proceeds are paid in connection with damage DISTRICT OF
COLUMBIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3009
1/01 (rev. 5/02)   (page 7 of 16 pages)

to, or the taking of, the Property, Borrower shall be responsible for repairing
or restoring the Property only if Lender has released proceeds for such
purposes. Lender may disburse proceeds for the repairs and restoration in a
single payment or in a series of progress payments as the work is completed. If
the insurance or condemnation proceeds are not sufficient to repair or restore
the Property, Borrower is not relieved of Borrower's obligation for the
completion of such repair or restoration.
Lender or its agent may make reasonable entries upon and inspections of the
Property. If it has reasonable cause, Lender may inspect the interior of the
improvements on the Property. Lender shall give Borrower notice at the time of
or prior to such an interior inspection specifying such reasonable cause.
  Borrower's Loan Application. Borrower shall be in default if, during the Loan
  application process, Borrower or any persons or entities acting at the
  direction of Borrower or with Borrower's knowledge or consent gave materially
  false, misleading, or inaccurate information or statements to Lender (or
  failed to provide Lender with material information) in connection with the
  Loan. Material representations include, but are not limited to,
  representations concerning Borrower's occupancy of the Property as Borrower's
  principal residence.
  Protection of Lender's Interest in the Property and Rights Under this Security
  Instrument. If (a) Borrower fails to perform the covenants and agreements
  contained in this Security Instrument, (b) there is a legal proceeding that
  might significantly affect Lender's interest in the Property and/or rights
  under this Security Instrument (such as a proceeding in bankruptcy, probate,
  for condemnation or forfeiture, for enforcement of a lien which may attain
  priority over this Security Instrument or to enforce laws or regulations), or
  (c) Borrower has abandoned the Property, then Lender may do and pay for
  whatever is reasonable or appropriate to protect Lender's interest in the
  Property and rights under this Security Instrument, including protecting
  and/or assessing the value of the Property, and securing and/or repairing the
  Property. Lender's actions can include, but are not limited to: (a) paying any
  sums secured by a lien which has priority over this Security Instrument; (b)
  appearing in court; and (c) paying reasonable attorneys' fees to protect its
  interest in the Property and/or rights under this Security Instrument,
  including its secured position in a bankruptcy proceeding. Securing the
  Property includes, but is not limited to, entering the Property to make
  repairs, change locks, replace or board up doors and windows, drain water from
  pipes, eliminate building or other code violations or dangerous conditions,
  and have utilities turned on or off. Although Lender may take action under
  this Section 9, Lender does not have to do so and is not under any duty or
  obligation to do so. It is agreed that Lender incurs no liability for not
  taking any or all actions authorized under this Section 9.
Any amounts disbursed by Lender under this Section 9 shall become additional
debt of Borrower secured by this Security Instrument. These amounts shall bear
interest at the Note rate from the date of disbursement and shall be payable,
with such interest, upon notice from Lender to Borrower requesting payment.
If this Security Instrument is on a leasehold, Borrower shall comply with all
the provisions of the lease. If Borrower acquires fee title to the Property, the
leasehold and the fee title shall not merge unless Lender agrees to the merger
in writing.
  Mortgage Insurance. If Lender required Mortgage Insurance as a condition of
                                Page 7

mortgage deed of trust document emanuel
making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from DISTRICT OF COLUMBIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3009 1/01 (rev. 5/02)    (page 8 of 16 pages)

the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.
Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.
Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).
As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:
  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.
  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain DISTRICT OF COLUMBIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3009 1/01 (rev. 5/02)    (page 9 of 16

mortgage deed of trust document emanuel

pages)

cancellation of the Mortgage Insurance, to have the Mortgage Insurance
terminated automatically, and/or to receive a refund of any Mortgage Insurance
premiums that were unearned at the time of such cancellation or termination.
11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds
are hereby assigned to and shall be paid to Lender.
If the Property is damaged, such Miscellaneous Proceeds shall be applied to
restoration or repair of the Property, if the restoration or repair is
economically feasible and Lender's security is not lessened. During such repair
and restoration period, Lender shall have the right to hold such Miscellaneous
Proceeds until Lender has had an opportunity to inspect such Property to ensure
the work has been completed to Lender's satisfaction, provided that such
inspection shall be undertaken promptly. Lender may pay for the repairs and
restoration in a single disbursement or in a series of progress payments as the
work is completed. Unless an agreement is made in writing or Applicable Law
requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be
required to pay Borrower any interest or earnings on such Miscellaneous
Proceeds. If the restoration or repair is not economically feasible or Lender's
security would be lessened, the Miscellaneous Proceeds shall be applied to the
sums secured by this Security Instrument, whether or not then due, with the
excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied
in the order provided for in Section 2.
In the event of a total taking, destruction, or loss in value of the Property,
the Miscellaneous Proceeds shall be applied to the sums secured by this Security
Instrument, whether or not then due, with the excess, if any, paid to Borrower.
In the event of a partial taking, destruction, or loss in value of the Property
in which the fair market value of the Property immediately before the partial
taking, destruction, or loss in value is equal to or greater than the amount of
the sums secured by this Security Instrument immediately before the partial
taking, destruction, or loss in value, unless Borrower and Lender otherwise
agree in writing, the sums secured by this Security Instrument shall be reduced
by the amount of the Miscellaneous Proceeds multiplied by the following
fraction: (a) the total amount of the sums secured immediately before the
partial taking, destruction, or loss in value divided by (b) the fair market
value of the Property immediately before the partial taking, destruction, or
loss in value. Any balance shall be paid to Borrower.
In the event of a partial taking, destruction, or loss in value of the Property
in which the fair market value of the Property immediately before the partial
taking, destruction, or loss in value is less than the amount of the sums
secured immediately before the partial taking, destruction, or loss in value,
unless Borrower and Lender otherwise agree in writing, the Miscellaneous
Proceeds shall be applied to the sums secured by this Security Instrument
whether or not the sums are then due.
If the Property is abandoned by Borrower, or if, after notice by Lender to
Borrower that the Opposing Party (as defined in the next sentence) offers to
make an award to settle a claim for damages, Borrower fails to respond to Lender
within 30 days after the date the notice is given, Lender is authorized to
collect and apply the Miscellaneous Proceeds either to restoration or repair of
the Property or to the sums secured by this Security Instrument, whether or not
then due. "Opposing Party" means the third party that owes Borrower
Miscellaneous Proceeds or the party against whom Borrower has a right of action
in regard to Miscellaneous Proceeds.
Borrower shall be in default if any action or proceeding, whether civil or
criminal, is begun that, in Lender's judgment, could result in forfeiture of the
Property or other material impairment DISTRICT OF COLUMBIA--Single
Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3009 1/01 (rev. 5/02)
(page 10 of 16 pages)

mortgage deed of trust document emanuel

of Lender's interest in the Property or rights under this Security Instrument.
Borrower can cure such a default and, if acceleration has occurred, reinstate as
provided in Section 19, by causing the action or proceeding to be dismissed with
a ruling that, in Lender's judgment, precludes forfeiture of the Property or
other material impairment of Lender's interest in the Property or rights under
this Security Instrument. The proceeds of any award or claim for damages that
are attributable to the impairment of Lender's interest in the Property are
hereby assigned and shall be paid to Lender.
All Miscellaneous Proceeds that are not applied to restoration or repair of the
Property shall be applied in the order provided for in Section 2.
    Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the
    time for payment or modification of amortization of the sums secured by this
    Security Instrument granted by Lender to Borrower or any Successor in Interest
    of Borrower shall not operate to release the liability of Borrower or any
    Successors in Interest of Borrower. Lender shall not be required to commence
    proceedings against any Successor in Interest of Borrower or to refuse to
    extend time for payment or otherwise modify amortization of the sums secured
    by this Security Instrument by reason of any demand made by the original
    Borrower or any Successors in Interest of Borrower. Any forbearance by Lender
    in exercising any right or remedy including, without limitation, Lender's
    acceptance of payments from third persons, entities or Successors in Interest
    of Borrower or in amounts less than the amount then due, shall not be a waiver
    of or preclude the exercise of any right or remedy.
    Joint and Several Liability; Co-signers; Successors and Assigns Bound.
    Borrower covenants and agrees that Borrower's obligations and liability shall
    be joint and several. However, any Borrower who co-signs this Security
    Instrument but does not execute the Note (a "co-signer"): (a) is co-signing
    this Security Instrument only to mortgage, grant and convey the co-signer's
    interest in the Property under the terms of this Security Instrument; (b) is
    not personally obligated to pay the sums secured by this Security Instrument;
    and (c) agrees that Lender and any other Borrower can agree to extend, modify,
    forbear or make any accommodations with regard to the terms of this Security
    Instrument or the Note without the co-signer's consent.
Subject to the provisions of Section 18, any Successor in Interest of Borrower
who assumes Borrower's obligations under this Security Instrument in writing,
and is approved by Lender, shall obtain all of Borrower's rights and benefits
under this Security Instrument. Borrower shall not be released from Borrower's
obligations and liability under this Security Instrument unless Lender agrees to
such release in writing. The covenants and agreements of this Security
Instrument shall bind (except as provided in Section 20) and benefit the
successors and assigns of Lender.
    Loan Charges. Lender may charge Borrower fees for services performed in
    connection with Borrower's default, for the purpose of protecting Lender's
    interest in the Property and rights under this Security Instrument, including,
    but not limited to, attorneys' fees, property inspection and valuation fees.
    In regard to any other fees, the absence of express authority in this Security
    Instrument to charge a specific fee to Borrower shall not be construed as a
    prohibition on the charging of such fee. Lender may not charge fees that are
    expressly prohibited by this Security Instrument or by Applicable Law.
If the Loan is subject to a law which sets maximum loan charges, and that law is
finally interpreted so that the interest or other loan charges collected or to
be collected in connection with the Loan exceed the permitted limits, then: (a)
any such loan charge shall be reduced by the amount necessary to reduce the
charge to the permitted limit; and (b) any sums already collected from DISTRICT
OF COLUMBIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3009
1/01 (rev. 5/02)   (page 11 of 16 pages)

mortgage deed of trust document emanuel

Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). To the extent permitted by Applicable Law, Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without DISTRICT OF COLUMBIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3009 1/01 (rev. 5/02) (page 12 of 16 pages)

Lender's prior written consent, Lender may require immediate payment in full of

mortgage deed of trust document emanuel

all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision DISTRICT OF COLUMBIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3009 1/01 (rev. 5/02)    (page 13 of 16 pages)

of, or any duty owed by reason of, this Security Instrument, until such Borrower

mortgage deed of trust document emanuel

or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products). Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be

DISTRICT OF COLUMBIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3009 1/01 (rev. 5/02)    (page 14 of 16 pages)

cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of

mortgage deed of trust document emanuel

may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall send written notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall give notice of sale by public advertisement as Trustee deems proper to protect the interests of Borrower and Lender. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of  % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Release. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by recording a Deed of Appointment. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law. DISTRICT OF COLUMBIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3009 1/01 (rev. 5/02) (page 15 of 16 pages)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

   (Seal)
- Borrower

   (Seal)
- Borrower

TAYYABA ALEEMUDDIN
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires November 10, 2007

[Space Below This Line For Acknowledgment] DISTRICT OF COLUMBIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3009 1/01 (rev. 5/02) (page 16 of 16 pages)

Page 14

mortgage deed of trust document emanuel
Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3009 1/01 (rev. 5/02)
(page 16 of 16 pages)

Index

| EMMANUEL PAYTON LOAN | Emanual Payton - 90 Day, Interest Only Loan | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Payment History | | | | | | | |
| 06/20/05 | Loan Ck Delivered | Adjusted | | | | | | 68,875.00 | |
| 06/20/05 | 5.2631 Points Charged | | | | | | | 3,625.00 | |
| 06/20/05 | Face Value of Note (Principle) | | | | | | | 72,500.00 | |
| 06/20/05 | Annual Rate of Interest | | | | | | | 0.15 | |
| 06/20/05 | Annual Interest | | | | | | | 10,875.00 | |
| 06/20/05 | Monthly Interest | | | | | | | 906.25 | |
| | | Interest Due | Amount PD | Date Paid | Late | Late Fees | Total Fees and Interest | Principle Payments | |
| 07/20/05 | Interest Only Loan Pymt Due | 906.25 | -906.25 | 7/20 | No | 0.00 | 0.00 | 0.00 | |
| 08/20/05 | Interest Only Loan Pymt Due | 906.25 | -906.25 | 8/22 | No | 0.00 | 0.00 | 0.00 | |
| 09/20/05 | Princple Payment Due Date | 906.25 | -906.25 | 9/27 | Yes | 45.31 | 45.31 | 0.00 | |
| 10/20/05 | Interest Only Loan Pymt Due | 906.25 | -906.25 | 10/24 | Yes | 45.31 | 45.31 | 0.00 | |
| 11/20/05 | Interest Only Loan Pymt Due | 906.25 | -906.25 | 11/21 | Yes | 45.31 | 45.31 | 0.00 | |
| 12/20/05 | Interest Only Loan Pymt Due | 906.25 | -906.25 | 12/20 | No | 45.31 | 45.31 | 0.00 | |
| 01/20/06 | Interest Only Loan Pymt Due | 906.25 | -903.00 | 1/20 | No | 0.00 | 3.25 | 0.00 | |
| 02/20/06 | Interest Only Loan Pymt Due | 906.25 | -903.00 | 2/20 | No | 0.00 | 3.25 | 0.00 | |
| 03/20/06 | Interest Only Loan Pymt Due | 906.25 | -903.00 | 3/20 | No | 0.00 | 3.25 | 0.00 | |
| 04/20/06 | Interest Only Loan Pymt Due | 906.25 | 0.00 | - | Yes | 45.31 | 951.56 | 0.00 | |
| 05/20/06 | Interest Only Loan Pymt Due | 906.25 | 0.00 | - | Yes | 45.31 | 951.56 | 0.00 | |
| 06/13/06 | Interest Only Loan Pymt | 906.25 | -1,806.00 | 6/15 | Yes | 45.31 | -854.44 | 0.00 | |
| 06/20/06 | Interest Only Loan Pymt Due | 906.25 | 0.00 | - | Yes | 45.31 | 951.56 | 0.00 | |
| 07/20/06 | Interest Only Loan Pymt Due | 906.25 | 0.00 | - | Yes | 45.31 | 951.56 | 0.00 | |
| 08/20/06 | Interest Only Loan Pymt Due | 906.25 | 0.00 | - | Yes | 45.31 | 951.56 | 0.00 | |
| 09/20/06 | Interest Only Loan Pymt Due | 906.25 | 0.00 | - | Yes | 45.31 | 951.56 | 0.00 | |
| 10/20/06 | Interest Only Loan Pymt Due | 906.25 | 0.00 | - | Yes | 45.31 | 951.56 | 0.00 | |
| 11/20/06 | Interest Only Loan Pymt Due | 906.25 | 0.00 | | Yes | 45.31 | 951.56 | 0.00 | |
| 12/20/06 | Interest Only Loan Pymt Due | 906.25 | 0.00 | | Yes | 45.31 | 951.56 | 0.00 | |
| 01/20/07 | Interest Only Loan Pymt Due | 906.25 | 0.00 | | Yes | 45.31 | 951.56 | 0.00 | |
| 02/20/07 | Interest Only Loan Pymt Due | 906.25 | 0.00 | | Yes | 45.31 | 951.56 | 0.00 | |
| 03/20/07 | Interest Only Loan Pymt Due | 906.25 | 0.00 | | Yes | 45.31 | 951.56 | 0.00 | |
| 04/20/07 | Interest Only Loan Pymt Due | 906.25 | 0.00 | | Yes | 45.31 | 951.56 | 0.00 | |
| 05/20/07 | Interest Only Loan Pymt Due | 906.25 | 0.00 | | Yes | 45.31 | 951.56 | 0.00 | |
| TOTALS | | 21,750.00 | -9,952.50 | | | 860.94 | 12,658.44 | | |
| | | | | | | | | | |
| REMAINING PRINCIPLE | | | | | | | | 72,500.00 | |
| Balance Due as of May 20, 2007 | | | | | | | | | 85,158.44 |
| | | | | | | | | | |
| G:\Josh\Epayton Secured Loan adj 1.xcl | | | | | | | | | |

EXHIBIT

B

ALL-STATE LEGAL®

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

---

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|

Stephanie Hunter
2276 Courtland Avenue, Oakland, CA 96401

Emanuel Payton
1438 Jonquil Street, N.W., Wash., D.C. 20012

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___Alameda___
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ___D.C.___
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Law Offices of Jeffrey W. Harab, P.C.
4600 North Park Avenue, Suite 101
Chevy Chase, Maryland 20815
(301) 656-1100

ATTORNEYS (IF KNOWN)

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ◉ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ◉ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ◉ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

○ **E. General Civil (Other)**          OR          ○ **F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| **G. Habeas Corpus/ 2255** | **H. Employment Discrimination** | **I. FOIA/PRIVACY ACT** | **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| **K. Labor/ERISA (non-employment)** | **L. Other Civil Rights (non-employment)** | **M. Contract** | **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⦿ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. 1332 - Action to enforce payment of loan

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ $85,158.44   Check YES only if demanded in complaint   JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  June 5, 2007   SIGNATURE OF ATTORNEY OF RECORD  _[signature]_

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.